IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>JOSE JULIO RODRIGUEZ-CUMBA,<br>also known as "Chambi", "Chembi",<br>"Josue", "Chambo", and "Patron",<br><br>Defendant. | CRIMINAL NO. 26 – 133(PAD)<br><br> |

## PLEA AND FORFEITURE AGREEMENT
## PURSUANT TO FED. R. CRIM. P. 11(c)(1)(B)

TO THE HONORABLE COURT:

The United States of America, the Defendant, Jose Julio Rodriguez-Cumba, and the Defendant's counsels, Saam Zangeneh, Esq. and Francisco J. Adams-Quesada, Esq., pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), state that they have reached a Plea Agreement, the terms and conditions of which are as follows:

### 1. Charges to which the Defendant will Plead Guilty

The Defendant agrees to plead guilty to Count One of the Information. As charged, Count One of the Information Provides:

Count One:  Beginning on a date unknown, but not later than in or about 2011, and continuing up to and until May 2024, in the District of Puerto Rico, elsewhere, and within the jurisdiction of this Court, Jose Julio Rodriguez-Cumba, also known as "Chambi", "Chembi", "Josue", "Chambo", and "Patron", the defendant herein, did

knowingly and intentionally engage in a continuing criminal enterprise, in that the defendant Jose Julio Rodriguez-Cumba, committed violations of Title 21, United States Code, Sections 841(a), 846, 952(a), 960 and 963, including Violations One through Five set forth below, which violations were part of a continuing series of violations of those statutes undertaken by the defendant, in concert with five or more other persons, with respect to whom the defendant occupied supervisory and management positions, and from which continuing series of violations the defendant obtained substantial income and resources.

In furtherance of the enterprise, and to effect the object thereof, in Puerto Rico, and elsewhere, on or about the dates, times and locations set forth below, Jose Julio Rodriguez-Cumba, the defendant herein, in concert with his associates and co-conspirators, committed and caused to be committed, a continuing series of felony drug violations, including but not limited to, the acts set forth as Predicate Acts below:

### Predicate Act One
(Conspiracy to Import Cocaine into the United States)

Beginning on a date unknown, but not later than the year 2015, and continuing up to and until May 2024, in the District of Puerto Rico, elsewhere, and within the jurisdiction of this Court, Jose Julio Rodriguez-Cumba, the defendant herein, knowingly and intentionally combined, conspired, confederated, and agreed with others known and unknown to the United States, to commit an offense against the United States, that is, to import into the United States from any place outside thereof, including the Republic of Venezuela and elsewhere, five kilograms or more of a

mixture or substance containing a detectable amount of cocaine, a Schedule II narcotic drug-controlled substance. All in violation of Title 21, United States Code, Sections 952(a), 960(a)(1) and (b)(1)(B)(ii), 963.

### Predicate Act Two
(Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances)

Beginning on a date unknown, but not later than 2011, and continuing up to and until May 2024, in the District of Puerto Rico, and within the jurisdiction of this Court, JOSE JULIO RODRIGUEZ-CUMBA, the defendant herein, knowingly and intentionally combined, conspired, confederated, and agreed with others known and unknown to the United States, to distribute and to possess with intent to distribute (i) five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II narcotic drug-controlled substance; (ii) a mixture and substance containing a detectable amount of buprenorphine, a Schedule III controlled substance; and (iii) a mixture or substance containing a detectable amount of marijuana, a Schedule I controlled substance. All in violation Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(ii), (b)(1)(D), (b)(1)(E), and 846.

### Predicate Act Three
(Importation of Cocaine into the United States
Approximately 611 Kilograms of Cocaine)

On or about September 6, 2021, in the District of Puerto Rico, elsewhere, and within the jurisdiction of this Court, Jose Julio Rodriguez-Cumba, the defendant herein, aiding and abetting others known and unknown to the United States, did



knowingly and intentionally import into the United States from any place outside thereof, that is the Republic of Venezuela and elsewhere, five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II narcotic drug-controlled substance. All in violation of Title 21, United States Code, Sections 952(a), 960(a)(1) and (b)(1)(B)(ii), and 963, and Title 18, United States Code, Section 2.

### Predicate Act Four
(Attempted Importation of Cocaine into the United States
Approximately 1260 Kilograms of Cocaine)

On or about October 22, 2024, in the District of Puerto Rico, elsewhere, and within the jurisdiction of this Court, Jose Julio Rodriguez-Cumba, the defendant herein, aiding and abetting others known and unknown to the United States, did knowingly and intentionally attempt to import into the United States from any place outside thereof, that is the Republic of Venezuela and elsewhere, five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II narcotic drug-controlled substance. All in violation of Title 21, United States Code, Sections 952(a), 960(a)(1) and (b)(1)(B)(ii), 963, and Title 18, United States Code, Section 2.

### Predicate Act Five
(Possession with Intent to Distribute Buprenorphine)

From on or about July 2023, and continuing up to and until May 22, 2024, in the Metropolitan Detention Center, a facility within the Bureau of Prisons, in Guaynabo, in the District of Puerto Rico, and within the jurisdiction of this Court,

JOSE JULIO RODRIGUEZ-CUMBA, the defendant herein, aiding and abetting others known and unknown to the United States, did knowingly and intentionally possess with intent to distribute a mixture or substance containing a detectable amount of buprenorphine, a Schedule III controlled substance. All in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(E), and Title 18, United States Code, Section 2.

## 2. Maximum Penalties

Count One: The statutory penalty for the offense charged in Count One of the Information, is a term of imprisonment which may not be less than twenty (20) years which may be up to life imprisonment; a fine not to exceed $2,000,000; and a supervised release term of not more than five years, all pursuant to Title 21, United States Code, Section 848(a) and Title 18, United States Code, Section 3583(b).

## 3. Sentencing Guidelines Applicability

The Defendant understands that the sentence will be imposed by the Court in accordance with Title 18, United States Code, Sections 3551-86, and the United States Sentencing Guidelines (hereinafter "Guidelines"), which are advisory pursuant to the United States Supreme Court decision in *United States v. Booker*, 543 U.S. 220 (2005). Further, the Defendant acknowledges that parole has been abolished, and that the imposition of the Defendant's sentence may not be suspended.

## 4. Stipulation as to the Amount of Narcotics

The United States of America and the Defendant stipulate for the purposes of

this Plea Agreement that the Defendant shall be accountable for possessing with intent to distribute and importing from any place outside of the United States, more than 2,000 kilograms of cocaine pursuant to Section 1B1.3 of the Guideline. The Defendant waives his right to jury trial or hearing on this issue and the Defendant acknowledges that the Court is not required to accept the parties' stipulation regarding the applicable drug weight.

### 5. Special Monetary Assessment

The Defendant agrees to pay a special monetary assessment ("SMA") of one hundred dollars ($100.00) per count of conviction. The SMA will be deposited in the Crime Victim Fund, pursuant to Title 18, United States Code, Section 3013 (a)(2)(A).

### 6. Fines and Restitution



The Court may, pursuant to Section 5E1.2 of the Guidelines order the Defendant to pay a fine. The Court may also impose restitution. The Defendant agrees to execute and make available, prior to sentencing, a standardized financial statement (OBD Form 500). The United States will advocate on behalf of any identified victim, and comply with its obligations under the Mandatory Victim Restitution Act of 1996.

### 7. Sentence to be Determined by the Court

The Defendant understands that the sentence to be imposed will be determined solely by the United States District Judge. The United States cannot make and has not made any promise or representation as to what sentence the Defendant will receive. Any discussions that the parties might have had about possible sentences are not

binding in any way on the Court, and do not constitute representations about what the parties will seek, or what the actual sentence will be.

## 8. Recommended Sentencing Guidelines Calculations

After due consideration of the relevant factors enumerated in Title 18, United States Code, Section 3553(a), the United States and the Defendant submit that the advisory Guidelines calculations listed below apply to the Defendant. However, the Defendant acknowledges that the Court is not required to accept those recommended Guidelines calculations.





Ƒ·ℝ·C

U.S. v. Jose Julio Rodriguez-Cumba

| SENTENCING GUIDELINES CALCULATIONS<br>COUNT ONE<br>21 U.S.C. §§ 848(a) | | | | | |
|---|---|---|---|---|---|
| Base Offense Level (More than 450 kilograms pursuant to U.S.S.G. §§ 2D1.5(a), 2D1.1(a)(5), 2D1.1(c)(1)) (Operating a Continuing Criminal Enterprise) | | | | 42 | |
| Possession of Dangerous Weapon (U.S.S.G. § 2D1.1(b)(1)) | | | | +2 | |
| Use of Violence (U.S.S.G. § 2D1.1(b)(2)) | | | | +2 | |
| Distribution within detention facility (U.S.S.G. § 2D1.1(b)(4)) | | | | +2 | |
| Maintained Premises for Purpose of Manufacture or Distribution (U.S.S.G. § 2D1.1(b)(12)) | | | | +2 | |
| Obstruction of Justice (U.S.S.G. § 3C1.1) | | | | +2 | |
| Acceptance of Responsibility pursuant to U.S.S.G. §3E1.1 | | | | -3 | |
| TOTAL ADJUSTED OFFENSE LEVEL | | | | (49)→43[1] | |
| CH Cat. I | CH Cat. II | CH Cat. III | CH Cat. IV | CH Cat. V | CH Cat. VI |
| Life | Life | Life | Life | Life | Life |

## 9. Sentence Recommendation

As to Count One, and after due consideration of the relevant factors enumerated in Title 18, United States Code, Section 3553(a), the parties agree that the Defendant may recommend a sentence of not lower than two hundred forty months (240) of imprisonment and the United States may recommend a sentence of up to three hundred and sixty (360) months imprisonment as to Count One, regardless of criminal history category determined by the Court.

---

1 U.S.S.G. ch. 5, pt. A, cmt. n.2 ("An offense level of more than 43 is treated as an offense level of 43")

### 10. No Stipulation as to Criminal History Category

The parties do not stipulate as to any Criminal History Category for the Defendant.

### 11. Waiver of Appeal

The Defendant knowingly and voluntarily agrees that, if the imprisonment sentence imposed by the Court is three hundred and sixty (360) months or less, the Defendant waives the right to appeal any aspect of this case's judgment and sentence, including, but not limited to the term of imprisonment or probation, restitution, fines, forfeiture, and the term and conditions of supervised release.



### 12. No Further Adjustments or Departures

The United States and the Defendant agree that no further adjustments or departures to the Defendant's total adjusted base offense level and no variant sentence under Title 18, United States Code, Section 3553—other than any explicitly provided for in this Plea Agreement—shall be sought by the Defendant. The parties agree that any request by the Defendant for an adjustment or departure that is not explicitly provided for in this Plea Agreement will be considered a material breach of this Plea Agreement, and the United States will be free to ask for any sentence, either guideline or statutory.

### 13. Satisfaction with Counsel

The Defendant is satisfied with counsel, Saam Zangeneh, Esq. and Francisco J. Adams-Quesada, Esq., and asserts that counsel has rendered effective legal assistance.

### 14. Rights Surrendered by the Defendant Through Guilty Plea

The Defendant understands that by entering into this Plea Agreement, the Defendant surrenders and waives certain rights as detailed in this agreement. The Defendant understands that the rights of criminal defendants include the following:

   a. If the Defendant had persisted in a plea of not guilty to the charges, the Defendant would have had the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if the Defendant, the United States and the judge agree.

   b. If a jury trial is conducted, the jury would be composed of twelve lay persons selected at random. The Defendant and the Defendant's attorney would assist in selecting the jurors by removing prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges. The jury would have to agree, unanimously, before it could return a verdict of either guilty or not guilty. The jury would be instructed that the Defendant is presumed innocent, that it could not convict the Defendant unless, after hearing all the evidence, it was persuaded of the Defendant's guilt beyond a reasonable doubt, and that it was to consider each charge separately.

   c. If a trial is held by the judge without a jury, the judge would find the facts and, after hearing all the evidence and considering each count separately, determine whether or not the evidence established the Defendant's guilt beyond a reasonable doubt.

   d. At a trial, the United States would be required to present its witnesses and other evidence against the Defendant. The Defendant would be able to confront those witnesses and the Defendant's attorney would be able to cross-examine them. In turn, the Defendant could present witnesses and other evidence on the Defendant's own behalf. If the witnesses for

the Defendant would not appear voluntarily, the Defendant could require their attendance through the subpoena power of the Court.

e.  At a trial, the Defendant could rely on the privilege against self-incrimination to decline to testify, and no inference of guilt could be drawn from the Defendant's refusal to testify. If the Defendant desired to do so, the Defendant could testify on the Defendant's own behalf.

## 15. Stipulation of Facts

The accompanying Stipulation of Facts signed by the Defendant is hereby incorporated into this Plea Agreement. The Defendant adopts the Stipulation of Facts and agrees that the facts therein are accurate in every respect. The Defendant agrees and accepts that had the matter proceeded to trial, the United States would have proven those facts beyond a reasonable doubt.



## 16. Limitations of Plea Agreement

This Plea Agreement binds only the United States Attorney's Office for the District of Puerto Rico and the Defendant. It does not bind any other federal district, state, or local authorities.

## 17. Entirety of Plea Agreement

This written agreement constitutes the complete Plea Agreement between the United States, the Defendant, and the Defendant's counsel. The United States has made no promises or representations except as set forth in writing in this Plea Agreement and denies the existence of any other terms and conditions not stated herein.

## 18. Amendments to Plea Agreement

No other promises, terms or conditions will be entered into between the parties unless they are in writing and signed by all parties.

## 19. Dismissal of Remaining Counts

At sentencing should there be any pending counts and should the Defendant comply with the terms of this Plea Agreement, the United States will move to dismiss the superseding indictment in Criminal Case No. 21-359 (PAD) and the indictment in 24-242 (RAM) pending against the Defendant.

## 20. Voluntariness of Plea Agreement

The Defendant acknowledges that no threats have been made against the Defendant and that the Defendant is pleading guilty freely and voluntarily because the Defendant is guilty.

## 21. Breach and Waiver

The Defendant agrees that defendant will have breached this Plea Agreement if, after entering into this Plea Agreement, the Defendant: (a) fails to perform or to fulfill completely each and every one of the Defendant's obligations under this Plea Agreement; (b) engages in any criminal activity prior to sentencing; or (c) attempts to withdraw the Defendant's guilty plea. In the event of such a breach, the United States will be free from its obligation under this Plea Agreement and the Defendant will not have the right to withdraw the guilty plea. Moreover, the Defendant agrees that if the Defendant is in breach of the Plea Agreement, the Defendant is deemed to have

waived any objection to the reinstatement of any charges under the Indictment, Information, or complaint which may have previously been dismissed or which may have not been previously prosecuted.

## 22. Potential Impact on Immigration Status

Pursuant to Federal Rule of Criminal Procedure 11(b)(1)(O), the Defendant hereby agrees and recognizes that if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## 23. Felony Conviction

The Defendant hereby agrees and recognizes that the plea of guilty in this case will be recognized as a felony conviction, which will result in the loss of certain rights, including but not limited to the right to vote in a federal election, to serve as a juror, to hold public office, and to lawfully possess a firearm.

## 24. Forfeiture Provision

Continuing Criminal Enterprise Forfeiture

The Defendant agrees to waive and forgo any interests or claims over any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of the offenses charged in Count One and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, the offense. The property to be forfeited includes, but is not limited to the following specific property:

(a) $2,218,620.00 United States currency abandoned by LUIS ROBERTO ALVARADO-REYES and seized by the government at the Miami International Airport, in the Southern District of Florida on September 9, 2021.

(b) $302,158.50 in United States currency formerly on deposit in Account No. xxx-xx8699 at Banco Popular of Puerto Rico, held under the name of "Jose Julio Rodriguez-Cumba" seized by the government on February 7, 2022.

(c) All United States currency on deposit in Account No. xxx-xx 9958 at Banco Santander, held under the name Chinchorro07 Corp.

(d) All United States currency on deposit in Account No. xxx-xx 0733 at Banco Santander, held under the name Cubarican Flavors LLC.

(e) All United States currency on deposit in Account No. 126-128412 at Cooperativa de Ahorro y Crédito de Rincón Savings, held under the name [15] NIURKA A. RODRIGUEZ-CUMBA.

(f) All United States currency on deposit in Account No. xxx-xx 1520 at Banco Popular Puerto Rico, held under the name [13] LUIS HECTOR ADAMES-NIEVES.

(g) All United States currency on deposit in Account No. 781-9980203 at Oriental, held under the name J.J.R. Multiservices, LLC.

(h) All United States currency on deposit in Account No. xxx-xx 8323 at Cooperativa de Ahorro y Crédito de Rincón, held under the name Jose Julio Rodriguez-Cumba.

(i) "El Ancla", a 2014 Pershing, 62-foot vessel, hull number FERP6205D414, seized on December 21, 2021.

(j) One William TurboJet 325, model 6-7231 dinghy boat seized on December 21, 2021.

(k) real property located at Urb. Mayaguez Terrace, 2007 Dr. Jose Larranaga Street, Mayagüez, Puerto Rico.

(l) real property located at #7 Road 459 Km 11.9 Barrio Jobos, Isabela, Puerto Rico.  Lot Number 1, located at Jobos Ward of Isabela, with a superficial area of 7860.7912 square meters. It boundaries are: by the NORTH, in 56.884 meters with lot number 3 of the substitute Inscription Plan; by the EAST, in 158.911 meters, with access lot in the substitute Registration Plan; by the SOUTH, in 42.142 meters with strip marked Widening in the substitute Inscription Plan that separates it from Highway 459; by the WEST, in 4 alignments totaling 155.354 meters with neighborhood road, which separates it from land of Idalia Hernández.

(m)        Property located at Lot #3, Road 466, Sec. Las Marias at

Barrio Jobos, Isabela, Puerto Rico, Property Number 23344 recorded at page 177 of volume 428 of Isabela, Registry of the Property of Aguadilla.

(n) real property located at #7 Calle Juan Morell Campo, Barrio Candelaria, Mayagüez Pueblo, Mayagüez, Puerto Rico. URBAN: Plot located on Street Number Two, today Street Morell Campos, place called Barcolona, Candelaria Ward of the city of Mayagüez, which has a surface space, according to measurement, of 249.80 square meters, equivalent to two (2) areas, forty-nine (49) centiare eighty (80) milliare. Bounding by the SOUTH, with the street in which it is called Morell Campos, to which it gives its front, and where it measures 10.78 meters; to the NORTH, with the Yagüez River, where it measures 9.36 meters; by the EAST, in a straight line owned by Cecilio Torres, where it measures 27.29 meters; and on the WEST, with land of the Seguinot Succession and another with land of the Brignoni Succession, by which side measures said plot 23.74 meters. On this lot was built a house of concrete and blocks, two floors, one low and one high, with concrete roof and concrete as well. The ground floor measures 35 and a half feet 4 inches by its front, 31 feet with 6 inches the back or bottom; 43 feet and four inches on the right side, entering, and 43 feet 4 inches on

the left side. The ground floor for commerce, with entrance for vehicles, with tile floors. The tall door measures 35 feet and 4 1/2 inches in front; 31 feet 6 inches deep; 43 feet 4inches on the right side; and 43 feet 4 inches on the left side. The said upper floor destined to housing with balcony to the front and terrace to the left side, with floors of tiles, comprising living room, dining room, three bedrooms, bathroom and kitchen, in addition to the said balcony to the terrace.

(o) real property located at 1479 Condado del Mar Apartment 1910, Ashford Avenue San Juan, Puerto Rico. URBAN: HORIZONTAL PROPERTY: CONDOMINIUM CONDADO DEL MAR of Santurce Norte. Apartment: 1910. AREA: 46.47 square meters. Irregularly located on the nineteenth floor of the building "Condado de Mar", in the northern sector of Santurce, San Juan, Puerto Rico, with total private area of five hundred square feet, equivalent to forty six square meters with forty-seven cents of square meters, measuring ten and eight feet eleven inches in its greatest width by twenty-six feet eleven inches in its greatest length consists of foyer, living room, bedroom, terrace, bathroom, closet dressing rooms, kitchen with work table, wall cabinets, stove-oven, sink and refrigerator. It adjoins the NORTH, with a

wall that separates it from a common corridor limited in a length of ten and eight feet eleven inches; by the SOUTH, in a broken line with outer courtyard in a length of ten and eight feet eleven inches; on the EAST, with the wall separating it from the apartment nineteen eight in a length of twenty-three feet seven inches and with an outdoor courtyard in a length of three feet seven inches; and on the WEST, with an outer courtyard in a length of three feet seven inches with a wall separating it from the service elevator pit and service hall in a length of twelve feet six inches. This apartment has its entrance door that communicates it with the limited common corridor that gives access to the elevators and exit stairs to the outside of the building and corresponds to the uncovered parking one hundred and forty-eight (148). Corresponds to this apartment in the common elements of the property a share equivalent to two hundred thousandths of one percent (0.200%).

(p) Jewelry seized from the Jose Julio Rodriguez-Cumba residence in Moca, Puerto Rico on September 10, 2021.

(q) Gold Bracelet seized by the government from 48 Urb. La Llamarada, in Moca, Puerto Rico on September 10, 2021;

(r) Gold ring with "LV" seized by the government from 48 Urb. La

Llamarada, in Moca, Puerto Rico on September 10, 2021;

(s) Gold Neck Chain with a cross seized by the government from 48 Urb. La Llamarada, in Moca, Puerto Rico on September 10, 2021.

(t) Gold neck chain with a cross seized by the government from 48 Urb. La Llamarada, in Moca, Puerto Rico on September 10, 2021.

(u) Gold neck chain with cross seized by the government from 48 Urb. La Llamarada, in Moca, Puerto Rico on September 10, 2021.

(v) Gold Neck Chain with a letter "A" charm seized by the government from 48 Urb. La Llamarada, in Moca, Puerto Rico on September 10, 2021.

(w)     "AVIANNE" Collar seized by the government from 48 Urb. La Llamarada, in Moca, Puerto Rico on September 10, 2021;

(x) "AVIANNE" Bracelet seized by the government from 48 Urb. La Llamarada, in Moca, Puerto Rico on September 10, 2021;

(y) Audemars Piguet "C47714" wristwatch seized by the government from 48 Urb. La Llamarada, in Moca, Puerto Rico on September 10, 2021.

(z) Rolex Date Just Wristwatch seized by the government from 48 Urb. La Llamarada, in Moca, Puerto Rico on September 10, 2021

(aa)     Gold Neck Chain seized by the government from 48 Urb. La Llamarada, in Moca, Puerto Rico on September 10, 2021;

(bb)     Rolex Wristwatch seized by the government from 48 Urb. La Llamarada, in Moca, Puerto Rico on September 10, 2021;

(cc)     Gold Neck Chain with "LV" charm seized by the government from 48 Urb. La Llamarada, in Moca, Puerto Rico on September 10, 2021.

(dd)     Audemars Piguet Wristwatch seized by the government from 48 Urb. La Llamarada, in Moca, Puerto Rico on September 10, 2021

(ee)     Audemars Piguet "I93063" wristwatch seized by the government from 48 Urb. La Llamarada, in Moca, Puerto Rico on September 10, 2021.

(ff) Audemars Piguet "YY1817X" wristwatch seized by the government from 48 Urb. La Llamarada, in Moca, Puerto Rico on September 10, 2021.

(gg)     Gold Bracelet seized by the government from 48 Urb. La Llamarada, in Moca, Puerto Rico on September 10, 2021;

(hh)     Rolex Sky Dweller wristwatch seized by the government from 48 Urb. La Llamarada, in Moca, Puerto Rico on September 10, 2021.

(ii) Gold bracelet seized by the government from 48 Urb. La Llamarada, in Moca, Puerto Rico on September 10, 2021;




(jj) Rolex Day Date Wristwatch seized by the government from 48 Urb. La Llamarada, in Moca, Puerto Rico on September 10, 2021

(kk)    Silver Bracelet seized by the government from 48 Urb. La Llamarada, in Moca, Puerto Rico on September 10, 2021;

(ll) $970.00 United States currency seized from a Honda Pilot bearing license plate number JRN-144 on September 10, 2021.

(mm)    2020, Toyota Highlander, JLM060.

(nn)    $3,800 seized from Jose Julio Rodriguez-Cumba on October 3, 2021.

(oo)    Jetski Yamaha Wave Runner 2500J021 seized by the government on September 14, 2022.

(pp)    Jetski Yamaha Wave Runner 1739L021 seized by the government on September 14, 2022.

(qq)    Triton Trailer 4TCSM1111MHL76775 seized by the government on September 14, 2022

(rr) Triton Trailer—No registration number—seized by the government on September 14, 2022.

The Defendant agrees to forfeit the aforementioned property under Title 21, United States Code, Sections 848 and 853.  If any of the property described above, as a result of any act or omission of the defendant: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

**25.Reservation of Allocution**

The Defendant understands that the United States reserves its full right of allocution for the purposes of sentencing in this matter. The United States further reserves the right to describe fully, both orally and in writing to the United States District Judge the nature and seriousness of the Defendant's misconduct not described in the charges to which the Defendant is pleading guilty. The United States further reserves the right to call witnesses or present evidence at the Defendant's sentencing

hearing to describe fully the Defendant's conduct. The United States also reserves the right to inform the presentence report writer and the Court of any relevant facts, to dispute any factual inaccuracies in the presentence report and to contest matters not provided for in this plea agreement.

W. STEPHEN MULDROW
United States Attorney

_____
Myriam Y. Fernández-González
Assistant U.S. Attorney, Chief
Asset Recovery, Money Laundering, and
Transnational Organized Crime Section
Dated: _____ 11.6.2025

_____
María L. Montañez-Concepción
Assistant U.S. Attorney, Deputy Chief
Asset Recovery, Money Laundering, and
Transnational Organized Crime Section
Dated: ___ 11.5.2025

_____
Ryan R. McCabe
Assistant U.S. Attorney
Dated: October 28 2025

_____
Saam Zangeneh
Counsel for the Defendant
Dated: 1-8-2026

_____
Francisco J. Adams-Quesada
Counsel for the Defendant
Dated: 1/8/2026

_____
Jose Julio Rodriguez-Cumba
Defendant
Dated: _____

## UNDERSTANDING OF RIGHTS

I have consulted with counsel and fully understand all of my rights as to the charges pending against me. Further, I have consulted with my attorney and fully understand my rights as to the provisions of the Guidelines that may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. My counsel has translated the Plea Agreement to me in the Spanish language and I have no doubts as to the contents of the agreement. I fully understand this agreement and voluntarily agree to it.

Date: _____ 1-8-2026

_____
Jose Julio Rodriguez-Cumba
Defendant

I am the attorney for Defendant. I have fully explained Defendant's rights to Defendant with respect to the pending charges. Further, I have reviewed the applicable provisions of the Guidelines and I have fully explained to Defendant the provisions of those Guidelines that may apply in this case. I have carefully reviewed every part of this Plea Agreement with Defendant. I have translated the Plea Agreement and explained it in the Spanish language to the Defendant who has expressed having no doubts as to the contents of the agreement. To my knowledge, Defendant is entering into this Plea Agreement voluntarily, intelligently, and with full knowledge of all consequences of Defendant's plea of guilty.

_____
Francisco J. Adams-Quesada
Counsel for the Defendant
Dated: _1-8-2026_

_____
Saam Zangeneh
Counsel for the Defendant
Dated: _1-8-2026_

## STIPULATION OF FACTS

The Stipulation of Facts does not purport to include all of the Defendant's illegal conduct during the course of his charged offense. It represents sufficient information for the Court to find a factual basis for accepting the Defendant's guilty plea in the above captioned matter and is not intended represent all the Defendant's relevant conduct for sentencing purposes. In conjunction with the submission of the accompanying Plea Agreement in this case, the Defendant—Jose Julio Rodriguez-Cumba admits that the Defendant is guilty as charged in Count One of the Information and admits the following:

Beginning on a date unknown, but not later than in or about 2011, and continuing up to and until May 2024, in the District of Puerto Rico, elsewhere, and within the jurisdiction of this Court, Jose Julio Rodriguez-Cumba, also known as "Chambi", "Chembi", "Josue", "Chambo", and "Patron", the defendant herein, did knowingly and intentionally engage in a continuing criminal enterprise, in that the defendant Jose Julio Rodriguez-Cumba, committed violations of Title 21, United States Code, Sections 841(a), 846, 952(a), 960 and 963, including Violations One through Five set forth below, which violations were part of a continuing series of violations of those statutes undertaken by the defendant, in concert with five or more other persons, with respect to whom the defendant occupied supervisory and management positions, and from which continuing series of violations the defendant obtained substantial income and resources.

In furtherance of the enterprise, and to effect the object thereof, in Puerto Rico,

and elsewhere, on or about the dates, times and locations set forth below, Jose Julio Rodriguez-Cumba, the defendant herein, in concert with his associates and co-conspirators, committed and caused to be committed, a continuing series of felony drug violations.

Beginning on a date unknown, but not later than the year 2015, and continuing up to and until May 2024, in the District of Puerto Rico, elsewhere, and within the jurisdiction of this Court, Jose Julio Rodriguez-Cumba, knowingly and intentionally combined, conspired, confederated, and agreed with others known and unknown to the United States, to commit an offense against the United States, that is, to import into the United States from any place outside thereof, including the Republic of Venezuela and elsewhere, five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II narcotic drug-controlled substance.

Beginning on a date unknown, but not later than 2011, and continuing up to and until May 2024, in the District of Puerto Rico, and within the jurisdiction of this Court, JOSE JULIO RODRIGUEZ-CUMBA, the defendant herein, knowingly and intentionally combined, conspired, confederated, and agreed with others known and unknown to the United States, to distribute and to possess with intent to distribute (i) five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II narcotic drug-controlled substance; (ii) a mixture and substance containing a detectable amount of buprenorphine, a Schedule III controlled substance; and (iii) a mixture or substance containing a detectable amount of marijuana, a

Schedule I controlled substance.

Specifically, the Defendant, directed, a large-scale drug trafficking organization (the "Enterprise"), that utilized land and sea transportation assets to import and distribute multi-hundred-kilogram shipments of cocaine from South America into Puerto Rico and the continental United States.

Upon the arrival of the cocaine shipments to Puerto Rico, portions of the cocaine would be distributed and sold throughout Puerto Rico. While other portions of the cocaine shipments would be further transported to the continental United States through the mail for distribution and sale. The drug trafficking activities of the Enterprise were extensive, and the Enterprise had more than five participants.

The Defendant made millions of dollars in profit from drug trafficking. The Defendant directed members of the enterprise to use violence in furtherance of the organization. Members of the Enterprise possessed firearms, including machine guns for protection and in furtherance of the Enterprise.

On or about September 6, 2021, the Defendant, directed the importation into the United States via boat from the Republic of Venezuela approximately 611 kilograms of cocaine.

On or about September 9, 2021, at the Miami International Airport, in the Southern District of Florida, members of law enforcement seized approximately $2,218,620.00 United States currency belonging to the Defendant.

On or about September 10, 2021, in the District of Puerto Rico, members of law

enforcement seized approximately 100 kilograms of cocaine belonging to the Defendant from a residence that was rented by the Defendant.

On or about and between September 10, 2021, and November 1, 2021, the Defendant directed members of the Enterprise to delete their cellular phones in attempt to obstruct law enforcement's investigation of the Defendant and the Enterprise.

On or about October 22, ~~2024~~ 2022, while the Defendant was in the Metropolitan Detention Center, a facility within the Bureau of Prisons, in Guaynabo, in the District of Puerto Rico, the Defendant and members of the Enterprise, attempted to import into the United States via boat from Republic of Venezuela approximately 1260 kilograms of cocaine.



From on or about July 2023 and continuing up to and until May 22, 2024, in the Metropolitan Detention Center, a facility within the Bureau of Prisons, in Guaynabo, in the District of Puerto Rico, the Defendant, caused other individuals to introduce buprenorphine into MDC Guaynabo.



For purposes of this plea agreement the Defendant admits that he was responsible that more than 2,000 kilograms of cocaine, were going to be unlawfully imported into the United States and distributed as part of the Enterprise.

Had this matter proceeded to trial, the United States would have presented evidence through the testimony of witnesses as well as physical evidence, and documentary evidence, which would have proven beyond a reasonable that the

U.S. v. Jose Julio Rodriguez-Cumba

Defendant is guilty as charged in Count One of the Information. Discovery was timely made available to the Defendant for review.

Ryan R. McCabe
Assistant U.S. Attorney
Dated: December 8, 2023

Saam Zangeneh
Counsel for the Defendant
Dated: 1-8- 2026

Francisco J. Adams-Quesada
Counsel for the Defendant
Dated: 1-8-2016

Jose Julio Rodriguez-Cumba
Defendant
Dated: 1-8- 202C